O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| IGNACIO RODRIGUEZ, | ) | Case No. EDCV 12-0416 RNB |
| Plaintiff, | ) | |
| | ) | ORDER AFFIRMING DECISION OF |
| vs. | ) | COMMISSIONER |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social | ) | |
| Security,[1] | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff filed a Complaint herein on March 28, 2012, seeking review of the Commissioner's denial of his application for disability insurance and Supplemental Security Income benefits.  In accordance with the Court's Case Management Order, the parties filed a Joint Stipulation on March 4, 2013.  Thus, this matter now is ready for decision.[2]

---

[1]     The Acting Commissioner is hereby substituted as the defendant pursuant to Fed. R. Civ. P. 25(d).  No further action is needed to continue this case by reason of the last sentence of 42 U.S.C. § 405(g).

[2]     As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative

1

**DISPUTED ISSUES**

2

As reflected in the Joint Stipulation, the disputed issues that plaintiff is raising

3

as the grounds for reversal and remand are as follows:

4

       1.     Whether the Administrative Law Judge ("ALJ") properly

5

considered all of the relevant medical evidence.

6

       2.     Whether the ALJ made proper adverse credibility

7

determinations with respect to plaintiff and his daughter.

8

       3.     Whether the ALJ made a proper vocational determination

9

at step five of the Commissioner's sequential evaluation process.

10

11

**DISCUSSION**

12

Preliminary, the Court will address the Commissioner's contention that, since

13

there was a previous unfavorable decision by ALJ Wurzel in April 2004, the current

14

case, adjudicated by ALJ Walters, is governed by Chavez v. Bowen, 844 F.2d 691

15

(9th Cir. 1988). (See Jt Stip at 10-12.)  In Chavez, 844 F.2d at 693, the Ninth Circuit

16

held that principles of res judicata apply to previous administrative decisions

17

regarding disability and impose an obligation on the claimant to come forward with

18

new and material evidence of changed circumstances in order to overcome the

19

presumption of continuing non-disability.  Moreover, the previous ALJ's findings

20

concerning residual functional capacity ("RFC"), education, and work experience are

21

entitled to some preclusive effect, and such findings cannot be reconsidered by a

22

subsequent ALJ absent new information not presented to the first ALJ.  See Stubbs-

23

Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008) (citing Chavez, 844 F.2d

24

at 694).

25

―――――――――――

26

record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties.  In accordance

27

with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined

28

which party is entitled to judgment under the standards set forth in 42 U.S.C. §
405(g).

1    Here, the Commissioner contends that a preclusive effect attaches to ALJ

2    Wurzel's (1) determination of non-disability and (2) determination that plaintiff had

3    an RFC for light work without any mental limitations.  (See Jt Stip at 10-12.)

4    However, the record reflects that ALJ Walters subsequently determined that plaintiff

5    had in fact "established a changed circumstance with new impairments" (albeit a

6    change that was "not substantial"). (See AR 17.)  Moreover, ALJ Walters considered

7    new medical information that was not presented to ALJ Wurzel in determining

8    plaintiff's RFC and concluded that plaintiff's "residual functional capacity has

9    somewhat changed due to the resolution of some impairments and the symptoms of

10   new impairments."  (See AR 19.)  Accordingly, the Court finds that ALJ Walters

11   implicitly concluded that plaintiff had overcome the presumption of continuing non-

12   disability and that reconsideration of plaintiff's RFC was not barred by ALJ Wurzel's

13   decision.

14   The Court therefore will now turn to the three disputed issues raised by

15   plaintiff.

16

17   **A.    Reversal is not warranted based on the ALJ's alleged failure to properly**

18   **consider the relevant medical evidence (Disputed Issue No 1).**

19   Disputed Issue No. 1 is directed to the alleged failure by ALJ Walters ("ALJ")

20   to properly consider the relevant medical evidence.  (See Jt Stip at 4-9.)  Plaintiff

21   contends that the ALJ improperly credited the opinion of the state agency physician,

22   Dr. Ombres, because she is only an ophthalmologist.  (See Jt Stip at 4-6.)  Plaintiff

23   also contends that the ALJ improperly rejected the opinion of his treating physician,

24   Dr. Evans, who diagnosed plaintiff with fibromyalgia.  (See Jt Stip at 7.)  Finally,

25   plaintiff contends that the ALJ improperly rejected the opinions of his treating

26   physicians – Drs. Havert, Seehrai, Alfonso, and Evans – with respect to his mental

27   impairment. (See Jt Stip at 8-9.)

28   //

3

1    The Court rejects each of plaintiff's contentions.  First, the fact that Dr. Ombres
2    is an ophthalmologist did not disqualify her from rendering an opinion as to
3    plaintiff's physical abilities.  In any event, Dr. Ombres's opinion was consistent with
4    the findings and opinions of an examining orthopedist and another state agency
5    physician  (see AR 472, 474-79, 497-98, 500), upon whose opinions the ALJ based
6    his determination of non-disability.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th
7    Cir. 2002) ("The opinions of non-treating or non-examining physicians may also
8    serve as substantial evidence when the opinions are consistent with independent
9    clinical findings or other evidence in the record.")

10   Second, the ALJ properly rejected Dr. Evans's diagnosis of fibromyalgia
11   because the record revealed no basis for that diagnosis.  (See AR 14.)  Specifically,
12   no other treating or examining physician diagnosed fibromyalgia or noted positive
13   trigger points and other symptoms and associated them with fibromyalgia.  Moreover,
14   the ALJ noted that Dr. Evans did not submit longitudinal treatment records showing
15   regular and consistent clinical findings of fibromyalgia.  See Anderson v.
16   Commissioner of Social Sec. Admin., 2013 WL 440703, at *6 (C.D. Cal. Feb. 5,
17   2013) (ALJ permissibly rejected fibromyalgia diagnosis where physician made no
18   specific findings of tender points on a 21 point evaluation); Social Security Ruling
19   12-2p at *2-*3 (ALJ cannot rely on a physician's fibromyalgia diagnosis alone, but
20   the medical evidence must meet specific diagnostic criteria, and the physician's
21   diagnosis cannot be inconsistent with the other evidence in the case record).

22   Third, the Court finds that the ALJ properly considered the opinions of
23   plaintiff's treating physicians with respect to his complaints of depression.  With
24   respect to Dr. Havert and Dr. Seehrai, the record indicates that they treated plaintiff
25   primarily from 2002 to 2004 (see AR 366-69), the period of ALJ Wurzel's decision,
26   which has not been reopened (see AR 10).  With respect to Dr. Alfonso, she proffered
27   no opinion as to any limitations in mental functioning that plaintiff might have;
28   rather, Dr. Alfonso diagnosed plaintiff with a major depressive disorder (see AR 440),

4

an impairment that the ALJ found plaintiff to have (see AR 13).  With respect to Dr. Evans, who opined that plaintiff's mental limitations effectively rendered him disabled (see AR 534-37), the ALJ rejected the opinion for multiple reasons, one of which was that the opinion was brief and conclusory (see AR 22).  The Court finds that this constituted a legally sufficient reason for not crediting Dr. Evans's opinion. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.")

The Court therefore finds and concludes that reversal is not warranted based on the ALJ's alleged failure to properly consider the relevant medical evidence.

**B.   Reversal is not warranted based on the ALJ's alleged failure to make proper adverse credibility determinations with respect to plaintiff and his daughter (Disputed Issue No. 2).**

Disputed Issue No. 2 is directed to the ALJ's adverse credibility determinations with respect to plaintiff and his daughter.  (See Jt Stip at 24-30.)

1.   Plaintiff's testimony

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12

F.3d 915, 918 (9th Cir. 1993); <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

Here, plaintiff testified that he could not work because of pain in his lower back and legs and because of depression. (<u>See</u> AR 57-59.) The ALJ determined that although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's symptoms concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's assessment of plaintiff's RFC. (<u>See</u> AR 23-24.)

In support of this adverse credibility determination, the ALJ proffered multiple reasons. For example, the ALJ noted that the objective medical evidence did not support plaintiff's assertions of disabling pain: in particular, the examining orthopedist opined that it was difficult to quantify the positive findings on examination because of plaintiff's "voluntary guarding," and the examining psychiatrist opined that there was no objective evidence of depression or anxiety. (<u>See</u> AR 24; <u>see also</u> AR 468-72, 480-85.) The ALJ similarly noted that the treatment record failed to show evidence of long-term, intractable pain and disuse, such as muscle atrophy or significant neurological dysfunction, and that entries in the record indicated that plaintiff was not in distress. (<u>See</u> AR 24; <u>see also</u> AR 423, 504, 506.) The Court finds that these constituted legally sufficient reasons on which the ALJ could properly rely in support of his adverse credibility determination. <u>See</u> <u>Chaudhry v. Astrue</u>, 688 F.3d 661, 672 (9th Cir. 2012) (ALJ may properly rely on lack of objective support for complaints of depression); <u>Morgan</u>, 169 F.3d at 600 (ALJ may properly consider conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); <u>Tidwell v. Apfel</u>, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support for the claimant's subjective complaints); <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on lack of objective evidence to support claimant's subjective

6

complaints); <u>Nyman</u>, 779 F.2d at 531 (noting that "a claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings").

The ALJ also noted that, although plaintiff testified that he had medication side effects consisting of dizziness, nausea, irritability, and blurred vision (<u>see</u> AR 60-61), the record did not indicate that he had regularly and consistently reported any side effects (<u>see</u> AR 24; <u>see also</u> AR 438, 441, 443, 444).  The Court finds that this constituted a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination.  <u>See</u> <u>Thomas</u>, 278 F.3d at 960 (ALJ properly used ordinary techniques of credibility evaluation to reject claimant's testimony that pain medication caused dizziness and difficulties in concentration); <u>Orteza</u>, 50 F.3d at 750 (ALJ may point to lack of evidence of side effects from prescribed medications to support adverse credibility determination); <u>see also</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (ordinary techniques of credibility evaluation apply in social security cases).

The ALJ also noted that plaintiff made inconsistent statements about his physical and mental symptoms.  (<u>See</u> AR 25.)  Specifically, the ALJ noted that (1) although plaintiff reported depression but denied visual or auditory hallucinations to the examining psychiatrist (<u>see</u> AR 418), he testified that he was anxious, had memory problems, forgot the names of family members, and heard voices (<u>see</u> AR 65-66); (2) the examining orthopedist noted that plaintiff "does not give a very coherent history" (<u>see</u> AR 468); and (3) although plaintiff reported pain in every location in his body to the examining orthopedist (<u>see</u> AR 468), he testified only as to back pain that radiated to his lower extremities (<u>see</u> AR 57) and did not discuss pain in other areas of his body until questioned by his attorney (<u>see</u> AR 75).  The Court finds that this constituted a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination.  <u>See</u> <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ properly considered evidence that

7

1    claimant was a "vague witness" who "was not clear or certain insofar as his self-
2    assessed work capabilities" and not "a precise judge of his own capacities").

3         The ALJ also noted that plaintiff's complaints that he was disabled and unable
4    to work were inconsistent with his stated daily activities, such as household chores,
5    cooking easy foods, dressing and bathing, occasional driving, and attending swap
6    meets.  (See AR 25; see also AR 482.)  Moreover, the ALJ clarified that although
7    such activities might not have necessarily translated to work-related activity, the
8    inconsistency in plaintiff's statements militated against fully accepting his claims.
9    (See AR 25.)  The Court finds that this constituted a legally sufficient reason on
10   which the ALJ could properly rely in support of his adverse credibility determination.
11   See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (daily activities may form basis
12   for adverse credibility determination where activities contradict claimant's other
13   testimony, independent of whether activities meet threshold for transferable work
14   skills); Smolen, 80 F.3d at 1283-84 (ALJ may consider claimant's inconsistent
15   statements in evaluating credibility).

16        The ALJ also noted that plaintiff appeared to have "worked off the books" by
17   selling items at a swap meet for approximately 2 years without reporting the income,
18   thereby calling into question the reliability of plaintiff's testimony.  (See AR 25-26;
19   see also AR 169, 482.)  The Court finds that this constituted a legally sufficient
20   reason on which the ALJ could properly rely in support of his adverse credibility
21   determination.  See Smolen, 80 F.3d at 1284 (ordinary techniques of credibility
22   determination include consideration of claimant's reputation for lying); Gallant v.
23   Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (ALJ may draw inferences logically
24   flowing from the evidence).

25        The Court therefore finds and concludes that reversal is not warranted based
26   on the ALJ's alleged failure to make a proper adverse credibility determination with
27   respect to plaintiff.
28   //

8

1        2.    Lay witness testimony

2        The law is well-established in this Circuit that lay witness testimony as to how

3  a claimant's symptoms affect the claimant's ability to work is competent evidence and

4  cannot be disregarded without providing specific reasons germane to the testimony

5  rejected. See, e.g., Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Smolen,

6  80 F.3d at 1288-89; Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

7        Plaintiff's daughter, Ms. Rodriguez, completed a Third Party Function Report

8  stating that plaintiff was unable to concentrate due to severe pain in his bones, joints,

9  and lower back; that plaintiff did light household chores such as laundry, making

10  beds, fixing things, and cleaning up; that plaintiff was unable to move or lift large or

11  heavy things; that plaintiff could not really do anything due to his pain symptoms and

12  medications; and that plaintiff had difficulty with all physical and mental abilities

13  except for reaching and hearing. (See AR 217-24.) The ALJ did not fully accept Ms.

14  Rodriguez's assertions. (See AR 26.)

15        In support of this adverse credibility determination, the ALJ proffered multiple

16  reasons. For example, the ALJ noted that Ms. Rodriguez appeared to lack personal

17  knowledge of at least some of the claims presented, exemplified by the inconsistency

18  between Ms. Rodriguez's report of no problems with reaching (see AR 222)

19  compared to plaintiff's allegation of impairment in his shoulders (see AR 26; see also

20  AR 214, 470, 472). The Court finds that this was a legally sufficient reason not to

21  fully accept Ms. Rodriguez's statements. See Lewis v. Apfel, 236 F.3d 503, 512 (9th

22  Cir. 2001) (ALJ properly rejected mother's testimony where she testified that

23  claimant slept through the night where claimant alleged insomnia).

24        The ALJ also noted that Ms. Rodriguez's statements failed to overcome the

25  probative effect of the medical evidence in this case, as summarized in the ALJ's

26  decision. (See AR 26.) The Court finds that this was a legally sufficient reason not

27  to fully accept Ms. Rodriguez's statements. See Bayliss v. Barnhart, 427 F.3d 1211,

28  1218 (9th Cir. 2005) (ALJ may discredit lay testimony that is inconsistent with

9

1  medical evidence).[3]

2       The Court therefore finds and concludes that reversal is not warranted based
3  on the ALJ's alleged failure to make a proper adverse credibility determination with
4  respect to plaintiff's daughter.

5

6  **C.    Reversal is not warranted based on the ALJ's alleged failure to make a**
7        **proper vocational determination (Disputed Issue No. 3).**

8       Disputed Issue No.3 is directed to the ALJ's determination at step five of the
9  Commissioner's sequential evaluation process, based on the testimony of a vocational
10 expert ("VE"), that a person with plaintiff's RFC could perform the jobs of bench
11 assembler, inspector, and product filler.  (See Jt Stip at 38-41.)  Specifically, plaintiff
12 contends that the VE's testimony conflicted with the Dictionary of Occupational
13 Titles ("DOT") because plaintiff's limitation to simple and repetitive tasks conflicted
14 with the jobs' requirement of a reasoning level of 2.[4]  (See Jt Stip at 38-40; see also
15 DOT Nos. 706.684-042 (Bench Assembler), 712.684-050 (Inspector), 780.684-066

16

17       [3]    The Court finds that the ALJ provided other reasons that were not legally
18 sufficient to reject Ms. Rodriguez's statements, such as, for example, the fact that she
19 did not appear at the administrative hearing, the fact that she had a financial interest
20 in the case, and the fact that she had a desire to help plaintiff.  (See AR 26.)
   However, these errors were harmless because the ALJ's two other reasons and
21 ultimate credibility determination were supported by substantial evidence.  See
22 Valentine v. Commissioner of Social Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009)
   (ALJ's improper rejection of testimony of claimant's wife because she was an
23 interested party was harmless error because there were other germane reasons for
24 rejecting her testimony).

25

26       [4]    The DOT describes reasoning level 2 as the ability to "[a]pply
27 commonsense understanding to carry out detailed but uninvolved written or oral
   instructions" and "[d]eal with problems involving a few concrete variables in or from
28 standardized situations."

10

1  (Product Filler).)  Plaintiff also contends that the hypothetical questions to the VE

2  failed to include his limitation against repetitive use of his arms, which would

3  preclude all of the jobs cited by the VE.  (See Jt Stip at 40-41.)

4          The Court rejects both of plaintiff's contentions.  First, the record does not

5  indicate that the ALJ ever determined that plaintiff was limited to work involving

6  simple and repetitive tasks, which is the premise of plaintiff's contention.  Instead,

7  the ALJ determined that plaintiff was limited to unskilled work (see AR 19, 83),

8  which plaintiff does not challenge.  According to the DOT, each of the jobs identified

9  by the VE required a Specific Vocational Preparation ("SVP") of 2, which is entirely

10  consistent with plaintiff's ability to perform unskilled work.[5]  Accordingly, the Court

11  finds that there was no conflict between the VE's testimony and the DOT.

12          Second, the record does not support plaintiff's assertion that he was precluded

13  from repetitively using his arms, particularly fine and gross manipulation.  Instead,

14  there was substantial evidence in the record to support the ALJ's finding that plaintiff

15  was restricted from overhead reaching (see AR 19; see also 472), a limitation that was

16  included in the hypothetical questions to the VE (see AR 82).  See Rollins v.

17  Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ did not err in omitting limitations

18  from hypothetical question that claimant had alleged but failed to prove).

19          The Court therefore finds and concludes that reversal is not warranted based

20  on the ALJ's alleged failure to make a proper vocational determination.

21                          ********************

22  //

23  //

24  _____

25          [5]     An SVP rating contemplates how long it generally takes to learn a job.

26  See Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  An SVP of 2, which
    contemplates "anything beyond short demonstration up to and including 1 month,"

27  corresponds to the definition of unskilled work in the Commissioner's regulations.

28  See Terry, 903 F.2d at 1276; see also 20 C.F.R. §§ 404.1568(a), 416.968(a).

1    IT THEREFORE IS ORDERED that Judgment be entered affirming the

2   decision of the Commissioner and dismissing this action with prejudice.

3

4   DATED:  April 4, 2013

5

6                                                      _____

7                                                      ROBERT N. BLOCK
                                                       UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12